# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KIMBERLY WARBINGTON,     )
                         )
       Plaintiff,         )
                         )
v.                     )      Civil Action No. 13-00119-N
                         )
CAROLYN W. COLVIN,      )
Acting Commissioner of Social Security,  )
                         )
       Defendant.      )

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Warbington brings this action seeking judicial review of a final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge, for all proceedings in this Court, pursuant to 28 U.S.C. § 636(c). (*See* Doc. 19 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 21 (order of reference).) Upon consideration of the administrative record ("R.") (Doc. 13), Warbington's brief (Doc. 14), the Commissioner's brief (Doc. 23), and the arguments made by counsel during the hearing on November 21, 2013 (*see* Docs. 24, 27), it is determined that the

Commissioner's decision denying Warbington benefits should be **AFFIRMED**.[1]

# I.     Procedural Background

On March 8, 2010, Warbington filed an application for DIB (R. 158-159) and one for SSI (R. 160-163), alleging disability beginning January 17, 2007 (*see* R. 158, 160). Her applications were initially denied. (*See* R. 82.) A hearing was then conducted before an Administrative Law Judge on October 3, 2011 (*see* R. 32-66). On October 21, 2011, the ALJ issued a decision finding Warbington was not disabled (R. 9-31),[2] and she sought review from the Appeals Council. The Appeals Council issued a decision declining to review the October 2011 ALJ determination on January 28, 2013 (*see* R. 1-6)—making that determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on March 12, 2013 (*see* Doc. 1).

# II.     Standard of Review and Claim on Appeal

In all Social Security cases, the plaintiff[3] bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the plaintiff has met this

---

[1]     Any appeal taken from this memorandum opinion and order and corresponding judgment shall be made directly to the Eleventh Circuit. (*See* Docs. 19, 21 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

[2]     It is noted that the administrative record (Doc. 13) contains a separate ALJ decision dated June 12, 2009, denying Warbington's February 27, 2007 application, for SSI, for a period of disability she alleged began December 1, 2006. (*See* R. 67-81.)

[3]     The terms "plaintiff" and "claimant" are used interchangeably herein.

burden, and thus proven that he or she is disabled, the examiner (most often an ALJ) must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* An ALJ, in turn,

> uses a five-step sequential evaluation to determine whether the [plaintiff] is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the [residual functional capacity, or] RFC[,] to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. App'x 868, 870 (11th Cir. Feb. 9, 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that he or she cannot do his or her past relevant work, it then becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.*; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court is to determine whether the Commissioner's decision

to deny a plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is **supported by** substantial evidence." *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)) (emphasis added).

On appeal to this Court, Warbington asserts two reasons why the Commissioner's decision to deny benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ failed to properly evaluate and articulate findings with regard to the medical opinion evidence; and (2) the ALJ failed to properly evaluate Warbington's migraine headaches. Because the second asserted error is essentially that the ALJ improperly evaluated Warbington's credibility, and because the first asserted error is essentially that the determination of Warbington's RFC is not supported by substantial evidence, the Court will address the second claim of error first.

# III.  Analysis

## A.  The ALJ properly evaluated Warbington's migraine headaches.

Warbington argues that "the ALJ erred as a matter of law in failing to properly evaluate [her] migraine headaches" after finding that Warbington does, indeed, "suffer from the severe impairment of migraine headaches."  (Doc. 14 at 7 (citing R. 14).)[4]  According to Warbington, "[d]espite this finding, the ALJ failed to offer any meaningful discussion of this severe impairment or its effects in her decision."  (*Id.*)  Warbington, however, concedes that limitations discussed by the ALJ in her decision "seem to indicate that the ALJ at least considered this severe impairment[—the migraines—]in the formation of her RFC finding," but

> these limitations are far less restrictive than those noted by Ms. Warbington at her administrative hearing.  Moreover, the ALJ's hearing decision does not indicate why the ALJ apparently discredited the greater portion of these complaints or how the ALJ found Ms. Warbington's migraine headaches to limit her only in the specific functions set forth in her decision.

(*Id.* at 7-8.)

Based on how Warbington frames this issue, it is apparent that she is contesting the ALJ's determination as to her credibility.  *See Cooper v. Commissioner of Soc. Sec.*, 521 Fed. App'x 803, 807-08 (11th Cir. June 6, 2013) (per curiam) (where the ALJ, like the ALJ here, first determined, based on the evidence, that the plaintiff had several underlying medical conditions, including migraines,

---

[4]     The ALJ found Warbington "has the following severe impairments: anxiety, depression, mild carpal tunnel syndrome, chronic back pain, migraine headaches, history of syncope, and vertigo."  (R. 14 (citing 20 C.F.R. § 416.920(c)).)

and then "found that those conditions could be expected to cause pain and significantly limit [the plaintiff's] ability to perform basic job tasks," but determined to "not fully credit [the plaintiff's] testimony regarding the disabling effects of that pain[,]" the district court and the Eleventh Circuit, ultimately, found no error "in [the ALJ's] assessment of [the plaintiff's] credibility"); *accord May v. Commissioner of Soc. Sec. Admin.*, 226 Fed. App'x 955, 958 (11th Cir. Apr. 6, 2007) (per curiam). As such, the Court will review this asserted error under the familiar "pain standard" applied by courts in this Circuit, pursuant to which it must be first noted that "subjective complaints of pain cannot in and of themselves serve as conclusive evidence of disability. [Instead, t]he record must document by medically acceptable clinical or laboratory diagnostic techniques the existence of a medical impairment which could reasonably be expected to produce the disabling pain." *Petteway v. Commissioner of Soc. Sec.*, 353 Fed. App'x 287, 288 (11th Cir. Nov. 18, 2009) (per curiam) (quoting *Chester*, 792 F.2d at 132).

> [In this Circuit, a] three-part "pain standard" applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) the objectively determined medical condition is of such a severity it can be reasonably expected to give rise to the alleged pain. *Id.*

*Petteway*, 353 Fed. App'x at 288-89; *accord Harville v. Colvin*, No. 4:11–CV–3619–VEH, 2013 WL 1346565, at *6 (N.D. Ala. Mar. 29, 2013); *see also Joyce v. Commissioner of Social Sec.*, No. 3:10–cv–842–J–MCR, 2011 WL 4048998, at *6 (M.D. Fla. Sept. 13, 2011) ("'[O]nce such an impairment is established, all evidence

about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability.' ***Thus, once the pain standard is satisfied, the issue becomes one of credibility***." (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)) (emphasis added)).

> When a claimant testifies to subjective complaints of pain, the ALJ must clearly articulate adequate reasons for discrediting the claimant's allegations of disabling symptoms. *Dyer*, 395 F.3d at 1210. In articulating his reasons, the ALJ need not specifically refer to every piece of evidence, so long as the decision "is not a broad rejection which is not enough to enable the district court or [, if necessary, the court of appeals] to conclude that the ALJ considered [the] medical condition as a whole." *Id.* at 1210–11 (quotation omitted). A clearly articulated credibility determination supported by substantial evidence will not be disturbed. *Foote*, 67 F.3d at 1562.

*Petteway*, 353 Fed. App'x at 289 (some internal citations modified); *see also Harville*, 2013 WL 1346565, at *6 ("If the ALJ wishes to make a credibility determination, then the ALJ 'must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'" (quoting *Foote*, 67 F.3d at 1562)); *Sharpe v. Astrue*, No. 5:07cv74/RS-MD, 2008 WL 1805436, at *6 (N.D. Fla. Apr. 15, 2008) (as long as "the implication [is] obvious to the reviewing court[,] . . . the Eleventh Circuit does not require an explicit finding as to the claimant's credibility" (citing *Dyer*, 395 F.3d at 1210)). Moreover,

> [t]he Eleventh Circuit has approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529 [or § 416.929], because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

*Id.*; *see also Harville*, 2013 WL 1346565, at *6 (when "evaluat[ing] the intensity and persistence of [a plaintiff's alleged] symptoms and their affect on his or her ability to work . . . the ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence" (citing 20 C.F.R. §§ 404.1529(c)(2)-(4), 416.929(c)(2)-(4))).

Here, at the fourth step of the sequential analysis, after citing, among other authority, § 416.929 (*see* R. 17), the ALJ's provides the following, applicable to Warbington's migraines:

- As to all severe impairments, including migraines, "[s]he has been treated primarily by her primary care physician, [Dr.] Hunte[, who has] treated [her] impairments conservatively with medications, including Lexapro, Tylenol with codeine, Zegerid, Antivert, and Xanax (Exhibit B9F). Treatment notes indicate that the impairments are generally well controlled on medication, although [Warbington] has presented to Dr. Hunte occasionally with complaints related to the severe impairments along with acute illness." (R. 17.) Such instances related to her migraines were: (1) on April 14, 2009, when she "presented to Dr. Hunte with complaints of headaches on the right side (Exhibit B9F). She explained that the pain is relieved with Tylenol and lying down" (R. 17); and (2) in April 2011, when she "again complained of migraine headaches and requested a refill on medications" (R. 18.)

- "In addition to receiving treatment from Dr. Hunte, [Warbington] has sought treatment at the emergency room and from specialists." (R. 18.) Such an instance, related to her migraines, was on November 25, 2006, when she presented to the ER "with complaints of headaches and dizziness (Exhibit B2F). A CT scan of the brain was negative. She was diagnosed with headaches and vertigo and given medications. She was instructed to follow up with her primary care physician." (R. 18.) Warbington, furthermore, reported chronic migraines to Dr. Jackson, the consultative examiner, and, "[b]ased on her examination of [Warbington] and review of the record, Dr. Jackson diagnosed [Warbington] with[, among other things,] chronic headache[s]." (R.

20.)  Dr. Jackson further noted that Warbington's "physical examination was 'completely normal,' and there is no evidence that [she] had a stroke in February 2010 as reported by [Warbington] because the workup was completely negative." (R. 20.)

The ALJ concluded that Warbington received very conservative, infrequent treatment for her severe impairments, including her migraines; specifically, she was treated with only medication and did not require more aggressive treatment. (*See* R. 21.)  The ALJ also concluded that there were minimal objective findings and that, of those findings, most were normal. (*See* R. 21.)  As to Warbington's credibility, the ALJ concluded as follows:

> [Warbington] testified that she is disabled because of the severe impairments; however, her statements concerning her impairments and their impact on her ability to work are considerably more limited and restricted than is established by the record as a whole.  First, as discussed throughout this decision, the medical records do not support [her] allegations of disabling symptoms.  The impairments are treated conservatively with medications.  [She] has not required more aggressive treatment.  In fact, the treatment notes show that she has been without medication at times (Exhibit B19F).  Additionally, there have been few, if any, adjustments to the medications[,] which shows that they are effective and do not cause significant side effects. [Further, Warbington] acknowledged that the medications are effective (Hearing Testimony).  She stated at the hearing that the medications cause side effects such as nausea and drowsiness, but she previously reported no side effects from prescribed medications[,] and treatment notes do not show that she has complained of significant side effects . . . .

(R. 21-22.)

The ALJ's decision goes on to discuss Warbington's sporadic work history "prior to the alleged disability onset date, which raises a question as to whether [her] continued unemployment is actually due to medical impairments (Exhibits B4F, B3F, and B3D)." (R. 22.)  And the ALJ also considered Warbington's daily

activities, as well as inconsistencies in her reports and the objective medical records (*see* R. 22), before concluding, "The record as a whole, including the objective medical evidence, the type and amount of treatment [Warbington] has received, [her] daily activities, her work history, and the inconsistent statements, weighs against [her] allegations of disabling symptoms and supports a finding that [she] can perform a limited range of light work . . . ."   (R. 22.)

As the above demonstrates, the ALJ has "clearly articulate[d] adequate reasons for discrediting [Warbington's] allegations of disabling symptoms." *Petteway*, 353 Fed. App'x at 289 (citing *Dyer*, 395 F.3d at 1210).   Those reasons are, moreover, supported by substantial record evidence.[5]   The ALJ did more than merely cite a lack of objective medical evidence; she considered, among other things, inconsistencies between Warbington's testimony and what the record reflected

---

[5]     *Compare Campbell v. Astrue*, No. 5:07cv196/RS-EMT, 2008 WL 3979499, at *7 (N.D. Fla. Aug. 22, 2008) ("Thus, the reasons articulated by the ALJ for discrediting Plaintiff's subjective complaints are proper, **and** they are based upon substantial evidence in the record.   Accordingly, the ALJ did not err in discrediting Plaintiff's allegations. (citing *Jones v. Department of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (emphasis added)); *Harville*, 2013 WL 1346565, at *6 ("Substantial evidence must support the reasons given for discrediting [a claimant's] testimony." (citing *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987)); *and Lockhart v. Barnhart*, 148 Fed. App'x 628, 629 (9th Cir. Sept. 16, 2005) (mem. op.) ("The record establishes that the ALJ applied the proper factors set forth in 20 C.F.R. § 404.1529, did not reject the complaint of pain solely due to a lack of objective medical evidence, and provided several clear and convincing reasons, supported by substantial evidence, to justify his credibility determination.   Therefore, the ALJ did not improperly reject Lockhart's testimony regarding the impact of her disabilities on her ability to work."), *with Harris v. Commissioner of Soc. Sec.*, Civil Action No. 10–cv–13410, 2011 WL 3440755, at *12 (E.D. Mich. June 14, 2011) ("[T]he ALJ's decision is flawed for[, among other,] reasons: . . . Substantial evidence does not support the ALJ's decision to discount Plaintiff's statements regarding his pain.").

regarding her ability to manage her migraines with medication,[6] as well as Warbington's daily activities.[7]  *See Nobles v. Astrue*, No. 6:06-CV-856-ORL-KRS, 2008 WL 816903, at *5-6 (M.D. Fla. Mar. 25, 2008) (in which the record included a statement from a treating physician that the plaintiff's "migraines had significantly interfered with her lifestyle[, t]he ALJ applied the pain and credibility standards used in this circuit.  Even though the ALJ noted that no objective tests confirmed the existence of migraine headaches, he found that Nobles' impairment could have been reasonably expected to produce the alleged symptoms.  He articulated specific facts, based on evidence in the record, to support his conclusion that these symptoms were not as severe as Nobles testified they were. . . . Contrary to Nobles' assertion, the ALJ did not discredit her testimony solely because it was inconsistent with objective medical evidence. Rather, the ALJ reviewed all available evidence, including the objective medical evidence, and determined that the functional limitations arising from Nobles' migraine headaches were not a severe as she

---

[6]     It is clearly proper for an ALJ to consider "any conflicts between a claimant's statements and the rest of the evidence."  *Harville*, 2013 WL 1346565, at *6; *see* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."); *see also Gontes v. Astrue*, 913 F. Supp. 2d 913, 921 (C.D. Cal. 2012) ("Because Plaintiff's testimony conflicted with the evidence that her medical conditions only minimally affected her ability to work and that her pain, diabetes, and asthma were well-controlled with medication and other treatments, the ALJ properly discounted it." (citations omitted)); *Fobian v. Astrue*, No. ED CV 08–567 PJW, 2009 WL 3416219, at *3 (C.D. Cal. Oct. 18, 2009) (use of record evidence "to conclude that [a claimant is] not truthful . . . is a valid reason to discredit a claimant's testimony").

[7]     An ALJ can also consider "a claimant's activities." *Harville*, 2013 WL 1346565, at *6.

reported. This was exactly the analysis required under the law." (citing *May*, 226 Fed. App'x at 958-59; *Arnold v. Heckler*, 732 F.2d 881, 883-84 (11th Cir. 1984)) (other citations omitted)).

Thus, the ALJ properly evaluated Warbington's migraine headaches—as well as her credibility. And this claim of error is due to be rejected.

**B.   In the course of determining Warbington's RFC, the ALJ's evaluation of, and findings with regard to, the medical opinion evidence—specifically, the physical RFC assessment from Dr. Hunte, a treating source—was proper.**

As the Commissioner points out in her brief (*see* Doc. 23 at 4-6), Warbington cannot rely on this Court's decision in *Coleman v. Barnhart*, 264 F. Supp. 2d 1007 (S.D. Ala. 2003), to the extent that decision holds that the Commissioner's burden to determine a plaintiff's RFC can ***never*** be met unless the Commissioner's—the ALJ's—RFC assessment is supported by an RFC or similar assessment from a treating or examining physician. This Court has recognized that such a requirement is not a correct pronouncement of the law. *See, e.g., generally McMillian v. Astrue*, CA No. 11–00545–C, 2012 WL 1565624 (S.D. Ala. May 1, 2012); *see also id.* at *4 n.5 (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)).

Instead, the correct analysis is more searching:

Clearly, the ALJ's [ ] RFC determination must be supported by substantial evidence, which also requires that the ALJ "***provide a sufficient rationale to link such evidence to the legal conclusions reached***." *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005); *compare id., with Packer v. Astrue*, Civil Action No. 11–0084–CG–N, 2013 WL 593497, at *4 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work." (quoting *Salter v. Astrue*, No. CA 11–00681–C, 2012 WL 3817791, at *3 (S.D. Ala. Sept. 4, 2012))); *see also Hanna v. Astrue*, 395 Fed. App'x 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)); *Ricks v. Astrue*, No. 3:10–cv–975–TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) ("'The existence of substantial evidence in the record favorable to the Commissioner may not insulate the ALJ's determination from remand when he or she does not provide a sufficient rationale to link such evidence to the legal conclusions reached.' Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision." (quoting *Russ*, 363 F. Supp. 2d at 1347)); *Packer*, 2013 WL 593497, at *4 (While "the Eleventh Circuit has declined to impose overly rigid requirements when reviewing disability decisions[,] meaningful review . . . requires [that] ALJs [ ] state with clarity the grounds for their decisions." (internal citations and quotation marks omitted)).

*Alexander v. Colvin*, Civil Action No. 2:12–00607–N, 2013 WL 5176355, at *5 (S.D. Ala. Sept. 13, 2013) (emphasis added).

Such linkage, moreover, may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be ***clearly set forth in the ALJ's decision***. *See, e.g., Durham v. Astrue*, Civil Action No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sep. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has

failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'") (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted)); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ ***could have*** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct.") (emphasis in original); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

*Hunter v. Colvin*, No. CA 2:12–00077–C, 2013 WL 1219746 (S.D. Ala. Mar. 25, 2013) (initial emphasis added).

### 1.   The ALJ properly gave less than controlling weight to the RFC determination provided by Dr. Hunte.

If an RFC from a treating source exists in the record, before the Court may consider whether an ALJ's RFC determination that does not give controlling weight to the treating source RFC is supported by substantial evidence, it must first determine whether substantial evidence supports the reasons the ALJ articulated for not giving controlling weight to the opinions of the treating source. *See, e.g., Thomas v. Astrue*, No. CA 11–0406–C, 2012 WL 1145211, at *9 (S.D. Ala. Apr. 5, 2012) ("Because the undersigned finds that the ALJ did not explicitly articulate an adequate reason, supported by substantial evidence, for rejecting a portion of [the treating physician's] PCE assessment, this Court must necessarily find that the ALJ's RFC determination is not supported by substantial evidence.").[8]

---

[8]    As discussed below, if substantial evidence supports those reasons, the Court

As to treating source opinions, the law in this Circuit is that they

> "must be given substantial or considerable weight unless 'good cause' is
> shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th
> Cir.1997).[9] Good cause is shown when the: "(1) treating physician's
> opinion was not bolstered by the evidence; (2) evidence supported a
> contrary finding; or (3) treating physician's opinion was conclusory or
> inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d
> at 1241. Where the ALJ articulate[s] specific reasons for failing to
> give the opinion of a treating physician controlling weight, and those
> reasons are supported by substantial evidence, there is no reversible
> error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed. App'x 652, 655 (11th Cir. Sept. 21,
2010) (per curiam) (some internal citations modified and footnote added); *accord*
*D'Andrea v. Commissioner of Soc. Sec. Admin.*, 389 Fed. App'x 944, 947-48 (11th Cir.
July 28, 2010) (per curiam).

Here, the ALJ found that, "[a]lthough Dr. Hunte is [Warbington's] treating
physician, his opinions are not given controlling weight for several reasons[,]"
including "limitations in the opinions are inconsistent his treatment of [Warbington]

---

then must determine whether the ALJ's RFC assessment is linked to specific evidence in the
record regarding the plaintiff's ability to perform the physical, mental, sensory, and other
requirements of work. If the ALJ's decision provides such linkage—that is, it gives this
Court a sufficient rationale to link the remaining record evidence to her legal
conclusions—the ALJ's decision is supported by substantial evidence and will be affirmed.

[9] "In every case, a treating physician will have greater access to the medical
records, and more familiarity with the patient and his condition than will an examining
physician or a physician who merely reviewed the record evidence. This is the reason for
the treating physician rule whereby greater deference is usually accorded to the opinion of a
treating physician than the opinion of a physician who has only examined the patient one
time or the opinion of a physician who has merely reviewed the medical records. This is the
reason the courts require an ALJ to provide specific, legitimate reasons for discounting a
treating physician's opinion." *Vine v. Astrue*, Civil Action No. 09-2212-KHV-GBC, 2010 WL
2245079, at *11 (D. Kan. May 11, 2010) (internal citations omitted), *report &
recommendation adopted*, 2010 WL 2245076 (D. Kan. June 2, 2010).

and the objective findings from examination and testing. . . . Despite the conservative treatment and minimal objective findings, Dr. Hunte assessed significant restrictions on [Warbington's] work activities that are incongruent with the medical records." (R. 23.) As multiple courts, including this one, have found, "[i]t is entirely appropriate for the ALJ to rely on the conservative nature of treatment in assessing the extent of impairment and . . . to discount [a] treating physician's conclusions." *McMillian*, 2012 WL 1565624, at *8 n.6 (quoting *Beveridge v. Commissioner of Soc. Sec.*, No. 10–12883, 2011 WL 4407564, at *6 (E.D. Mich. July 18, 2011) (citing cases)); *see also Burney v. Astrue*, No. CV 111–156, 2012 WL 5199760, at *3 (S.D. Ga. Sept. 28, 2012) ("A course of conservative treatment may be used to discount a doctor's assessment of a plaintiff as disabled." (citation omitted)), *report and recommendation adopted*, 2012 WL 5199747 (S.D. Ga. Oct. 22, 2012); *Patterson v. Astrue*, No. 1:07–cv–00129–MP–AK, 2008 WL 4097461, at *1 (N.D. Fla. Aug. 27, 2008) ("[A] contradiction between a treating physician's opinion and her own medical records has been held to constitute one possible sufficient ground for rejecting a treating physician's opinion." (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *cf. Madison v. Astrue*, No. 08-1243-JTM, 2009 WL 1873811, at *5 (D. Kan. June 30, 2009) ("An ALJ may give less weight to the opinion of a physician when it is inconsistent with the other substantial evidence in the record." (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007))).

Because the ALJ has articulated an appropriate reason to not give Dr. Hunte's opinion controlling weight, and because that reason is supported by

substantial evidence, the undersigned will now turn to the ALJ's RFC determination, to examine whether that assessment is linked to specific evidence in the record regarding the plaintiff's ability to perform the physical, mental, sensory, and other requirements of work. *See, e.g., Salter*, 2012 WL 3817791, at *3.

### 2. The ALJ's RFC assessment is supported by substantial evidence and due to be affirmed.

A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure"—"is a medical assessment of what th[at plaintiff] can do in a work setting despite any mental, physical or environmental limitations caused by [his or her] impairments and related symptoms." *Watkins*, 457 Fed. App'x at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). At the fourth step of the sequential analysis, at which the ALJ determines a plaintiff's RFC, an ALJ utilizes the plaintiff's past relevant work as a starting point, from which his or her current impairments (or at least those documented by credible evidence) are deducted, to determine: (1) the RFC; and (2) whether that RFC allows the plaintiff to perform his or has past relevant work *or, if not,* whether, considering that RFC, along with the plaintiff's age, education, and work experience, there are other jobs he or she can perform.[10] *See id.* ("The ALJ's finding as to a [plaintiff's] RFC is based on **all the**

---

[10] Indisputably, an ALJ is never going to find an RFC that is in excess of a plaintiff's past-relevant work, as that work is categorized by the ALJ. Therefore, if a claimant had past relevant work in the medium and light range—**as categorized by the ALJ**—an ALJ is not going to then find an RFC greater than medium work and, indeed,

*relevant evidence in the record*, including any medical evidence, and is used in steps four and five of the sequential evaluation to determine whether the claimant can do her past relevant work or any other work." (citing §§ 404.1545(a)(1), (5), 416.945(a)(1), (5)) (emphasis added)); *cf. Morin v. Secretary of Health & Human Servs.*, 835 F. Supp. 1414, 1430 (D.N.H. 1992) ("There is little doubt that RFC assessments submitted by SSA experts will serve, at the very least, as a ***starting point*** in the ALJ's determination of an individual's ultimate RFC. This is so, even when submitted without benefit of claimant's testimony at the hearing [or] without benefit of further medical evidence submitted at the time of the hearing. However, the Secretary's regulations provide for a modifying process that is ***responsive to the impact of a claimant's particular symptoms***, such as pain, on his or her RFC as it is otherwise assessed. . . ." Moreover, "the benchmark of the ***fact-specific*** process is an ***individualized*** evaluation. That process of possibly modifying an RFC necessarily takes into account claimant's credibility on subjective matters." (citations omitted and emphasis added)).

Here, at the fourth step, the ALJ determined Warbington's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 416.967(b). She can

---

might even "default" to light work. *Cf. Squires v. Astrue*, Civil No. 07-5096, 2008 WL 1776941, at *9 (W.D. Ark. Mar. 24, 2008) (rejecting a plaintiff's argument "that the ALJ [erred] in concluding that she could return to work at a heavier exertional level than she had ever performed in the past"; in doing so, the court noted that the VE was present during the plaintiff's description of her past work as a caregiver and "categorized the caregiver job based on plaintiff's own description of the position, which would qualify the job as heavy work" under the regulations (citations omitted)).

lift and carry up to twenty pounds occasionally and ten pounds frequently. She needs to alternate between sitting and standing approximately every hour without leaving the workstation. She can frequently handle and finger because of the mild carpel tunnel syndrome. She can occasionally operate foot controls; climb stairs and ramps; bend; stoop; kneel; crouch; and crawl. She can tolerate occasional exposure to temperature extremes, humidity and wetness, and concentrated environmental pollutants. She is unable to climb ladders, scaffolds, or ropes or work at unprotected heights or around dangerous equipment. She is limited to unskilled work involving only short, simple and one to two step tasks. She must avoid complex or detailed instructions or tasks. She is unable to work in crowds and is limited to jobs with minimal changes in the work setting and routines.

(R. 17.) The ALJ also succinctly summarized the foundations for these limitations—on Warbington's ability to perform the physical, mental, sensory, and other requirements of work—later in her decision. These foundations are, importantly, for purposes of facilitating this Court's review, all supported by record evidence. As documented by the ALJ, Warbington

can lift and carry up to twenty pounds occasionally and ten pounds frequently. More strenuous lifting and carrying is precluded by the pain and limitations that could reasonably result from the chronic back pain and migraine headaches. She can sit for six hours in an eight-hour workday and stand and/or walk for six hours in an eight-hour workday, but she needs to alternative between sitting and standing approximately every hour without leaving the workstation because of the chronic back pain. She can frequently, but not constantly, handle and finger because of the mild carpal tunnel syndrome. She can occasionally operate foot controls; climb ladders, scaffolds, and ropes; bend; stoop; kneel; crouch; and crawl due to the limitations caused by the chronic back pain and history of syncope and vertigo. She can tolerate occasional exposure to temperature extremes, humidity and wetness, and concentrated environmental pollutants as a result of the migraine headaches and history of syncope and vertigo. She is unable to climb ladders, scaffolds, or ropes or work at unprotected heights or around dangerous equipment due to the migraine headaches and history of syncope and vertigo. She is limited to unskilled work involving only short, simple and one to two step job tasks; she must avoid complex or detailed instructions or tasks; and she

19

is unable to work in crowds and is limited to jobs with minimal changes in the work setting and routines because of the limitations in social functioning and concentration, persistence or pace caused by the anxiety and depression.

(R. 21.)

In her brief, Warbington "submit[s] that there is inadequate support for [the ALJ's RFC assessment] because the record contains no physical RFC assessment from any physician which supports the difference in the ALJ's assigned RFC from the opinion of . . . Dr. Hunte . . . ." (Doc. 14 at 6.) But, as explained to Warbington in the order denying the request to waive oral argument (Doc. 24), and restated above, as long as an ALJ's RFC determination is supported by—and linked to—substantial and tangible evidence regarding her current ability to perform the physical, mental, sensory, and other requirements of work, there need not be an RFC determination from a physician.[11] *See, e.g., Salter*, 2012 WL 3817791, at *3. As shown by the ALJ's extensive review, and analysis, of the record evidence (*see* R. 17-24) and, moreover, by her helpful summary (*see* R. 21, excerpted above)—linking the work limitations she imposed to Warbington's impairments that are documented by credible evidence—it is clear that the ALJ's RFC assessment is thorough. Such thoroughness facilitates a meaningful review by this Court. And that review has, in turn, confirmed that the assessment is supported by substantial evidence.[12]

---

[11]     As also explained above, if the record contains an RFC from a treating source, as does the record here, the ALJ must also articulate, as the ALJ did here, an appropriate reason, supported by substantial evidence, to not give the treating source's opinion controlling weight.

[12]     After, properly, choosing not to give controlling weight to Dr. Hunte's physical

Finally, it is noteworthy that, after, first, being placed on notice that her reliance on *Coleman v. Barnhart* was misplaced and, second, being apprised of the correct legal analysis, (*see generally* Doc. 24), Warbington, at the hearing, still failed to argue that the ALJ's RFC assessment was not linked to pertinent substantial record evidence.

Therefore, in the course of determining Warbington's RFC, the ALJ properly evaluated, and made proper findings regarding, the medical opinion evidence. And this claim of error is also due to be rejected.

## IV.    Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying Warbington benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the 16th day of December, 2013.

    */s/ Katherine P. Nelson*
    **KATHERINE P. NELSON**
    **UNITED STATES MAGISTRATE JUDGE**

---

RFC assessment, of less than light work (*see* R. 425), Warbington's past relevant work as a personal care assistant, classified as physically exertional "medium work" (*see* R. 25), clearly provided the starting point for the ALJ's assessment of Warbington's current physical exertional level. *Compare* R. 17 (assigning an RFC of "a limited range of light work[,]" including the ability to "lift and carry up to twenty pounds occasionally and ten pounds frequently" and the need "to alternate between sitting and standing approximately every hour without leaving the workstation"), *with* 20 C.F.R. § 416.967(b)-(c) (defining "light work" as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and/or sometimes requiring "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls," and "medium work" as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds").